IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| BENJAMIN SABO,<br><br>Plaintiff,<br><br>vs.<br><br>ALLEGHENY COUNTY, MR. SHANE DADY, RENEE MADDEN, KATHLEEN GIBBONS, M.D. THOMAS LJUNGMAN, ANDREW BELL, SUBOXONE NURSE TORI PIPAK, JOHN/JANE DOE(S), JOSIE SQUIB,<br><br>Defendants. | ) | Civil Action No.:<br>2:25-CV-00287-DSC-CBB<br><br>David S. Cercone<br>Senior United States District Judge<br><br>Christopher B. Brown<br>United States Magistrate Judge |

**<u>REPORT AND RECOMMENDATION</u>**
**<u>ON MOTIONS TO DISMISS ECF Nos. 60, 62, 64</u>**

**Christopher B. Brown, United States Magistrate Judge**

## I. Recommendation

This civil action was initiated in this court on February 26, 2025, by Plaintiff Benjamin Sabo who was a pretrial detainee incarcerated at Allegheny County Jail, Pennsylvania ("ACJ"). ECF No. 1; ECF No. 57 at ¶ 16. Sabo alleges the Defendants - several ACJ corrections officials, related entities,[1] and medical personnel[2] -

[1] Defendants related to ACJ include: Allegheny County ("County"), Deputy Warden of ACJ Shane Dady ("Deputy Warden Dady"), and Deputy Health Services Administrator Renee Madden ("Administrator Madden").

[2] Defendant medical personnel include: Physician's Assistant Kathleen Gibbons ("PA Gibbons"), Thomas Ljungman, M.D. ("Dr. Ljungman"), Andrew Bell, M.D. ("Dr. Bell"), Assistant Director of Nursing Josie Squib ("Nurse Squib"); Physician's Assistant Tori Pipak ("PA Pipak"), and unnamed Doe medical defendants.

violated his constitutional rights under 42 U.S.C. § 1983 and federal law while he was in custody at ACJ. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

Presently pending before the Court are the following:

1. A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) by Dr. Bell and PA Gibbons ECF No. 60;

2. A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) by the County, Deputy Warden Dady and Administrator Madden ECF No. 62; and

3. A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) by PA Pipak ECF No. 64.

The motions are fully briefed and ripe for consideration. ECF Nos. 61, 63, 65, 72. For the reasons that follow, it is respectfully recommended the motions be granted in their entirety and the claims against Dr. Bell, PA Gibbons, the County, Deputy Warden Dady, Administrator Madden and PA Pipak be dismissed with prejudice.

## II. Report

### a. Background

In October 2023, Sabo was placed into custody at ACJ as a pretrial detainee. ECF No. 57 at ¶ 16. He alleges he received inadequate medical care from Defendants related to wound care and suboxone treatment.[3] *Id.* at ¶¶ 17-71. He

---

[3] Sabo also alleges that he was denied a request for a specialized medical shoe, but does not allege how this supports any of his section 1983 or other federal claims, nor does he argue in his response brief that he intends for these facts to support a standalone claim. *See* ECF No. 57 at ¶¶ 81-90 (outlining claim for deliberate indifference to wound care); ¶¶ 91-101 (outlining claim for inadequate suboxone treatment); ¶¶ 102-113 (outlining ADA failure to accommodate claim related to

also claims the Corrections Defendants failed to protect him when another inmate assaulted him. *Id.* at ¶¶ 72-80. Each occurrence is recounted separately.

**i. Wound Care**

Upon his arrival at ACJ, Sabo had an open wound on his left leg which was reported to ACJ medical staff. *Id.* at ¶¶ 17-18. At some time in October 2023, Sabo was briefly admitted to a hospital for treatment related to sepsis he contracted from the leg wound. *Id.* at ¶ 19. At that time, Sabo was prescribed suboxone for his substance use condition. *Id.* After Sabo returned to ACJ from the hospital, he claims several Defendants failed to provide adequate medical care for his wound. *Id.* at ¶ 20. Specifically, Sabo claims that PA Gibbons, Dr. Bell, Dr. Ljungman, and Nurse Squib failed to properly clean his wound and because of this, he contracted and was diagnosed by ACJ staff as having MRSA[4] and pseudomonas. *Id.* at ¶¶ 21-28. According to Sabo, these are "deadly bacterial infections that require immediate hospitalization and IV treatment." *Id.* at ¶ 27. Sabo claims that PA Gibbons, Dr. Bell, Dr. Ljungman, and Nurse Squib prescribed ineffective oral antibiotics for these infections and delayed sending him to the hospital for IV antibiotic treatment for one month. *Id.* at ¶¶ 30-33. Sabo was hospitalized in January 2024. *Id.* at ¶ 33. Sabo claims before he was hospitalized, he was told he would not receive his

---

mental health disabilities); ¶¶ 114-128 (outlining procedural due process and failure to protect claims related to an inmate assault); ECF No. 72 (recounting facts about the request for medical shoe but failing to incorporate it into any analysis that it supports a standalone cause of action). Accordingly, these facts are not factored into the discussion below.

[4] MRSA stands for Methicillin-resistant Staphylococcus aureus which is a bacterial infection that is resistant to some forms of antibiotics. *See* https://www.cdc.gov/mrsa/about/index.html l*ast visited 5/12/2026*.

scheduled wound care "due to staffing shortages." *Id.* at ¶ 34. Sabo claims after he was discharged from the hospital, he did not receive adequate wound care and was denied pain medications to manage the severe pain caused by his wound. *Id.* at ¶¶ 35-36. Sabo alleges his wound became black, oozed puss, emitted a putrid odor, was warm to the touch and was extremely painful. *Id.* at ¶ 38. Sabo filed several grievances related to the alleged lack of adequate medical care and maintains Defendants County, Deputy Warden Dady, PA Gibbons, Administrator Madden, Dr. Bell, Dr. Ljungman, Nurse Squib and Does implemented and/or acquiesced in a policy, procedure and/or custom of providing inadequate medical care to inmates to control and contain costs of medical services. *Id.* at ¶¶ 41-42.

On or about March 7, 2024, Sabo's attorney notified Administrator Madden of the lack of adequate medical care he received at ACJ. *Id.* at ¶ 43. Sabo claims after this, he received appropriate wound care and his wound significantly improved. *Id.* at ¶¶ 43-49. However, in October 2024, Defendant Gibbons modified Sabo's wound care by reducing the number of wound care treatments Sabo received. *Id.* at ¶ 50. Sabo claims his wound worsened and he was subjected to unnecessary pain and suffering. *Id.* Sabo claims his wound care treatments were reduced for cost saving measures at ACJ. *Id.* at ¶ 51.

### ii. Suboxone Treatment

Sabo has a substance use condition and was prescribed suboxone in October 2023. *Id.* at ¶ 52. Sabo was prescribed an 8.2 milligram dose three times per day which he received on the medical pod at ACJ. *Id.* at ¶¶ 52-53. Sabo was

administered all three suboxone pills at once daily at 3:00 a.m. *Id.* at ¶ 54. He claims he was unable to fall back asleep after he was administered his medication and because of his other mental health conditions including anxiety, depression and PTSD. *Id.* at ¶¶ 55-56. He also claims he would experience withdrawal symptoms, cravings and pain because he was administered the suboxone at 3:00 a.m. *Id.* at ¶ 60. Sabo reported these negative effects to PA Pipak and requested the suboxone be administered "in a way which would not negatively effect his physical or mental health." *Id.* at ¶¶ 62-63. Sabo continued to receive his medications daily at 3:00 a.m. until July 15, 2024, when he began to receive his suboxone at 7:00 p.m. *Id.* at ¶ 71.

**iii. Assault**

In July 2024, another inmate struck Sabo over the head with a metal cane while he and the inmate were waiting in line for medication which injured his head and ear and caused him to sustain a concussion. *Id.* at ¶¶ 72, 80. Sabo claims only one correctional officer was supervising the inmates in line for medications. *Id.* at ¶ 73. He claims ACJ maintains a policy that requires a captain and sergeant to observe the medication line. *Id.* at ¶¶ 74-75. He also claims ACJ maintains a policy which prohibits inmates from having metal inside ACJ. *Id.* at ¶ 76. Sabo alleges Corrections Defendants failed to follow these policies, was aware of the lack of staffing at ACJ and failed to protect him. *Id.* at ¶¶ 77-79.

**iv. Sabo's Claims and Pending Motions to Dismiss**

Sabo initiated the present action and several Defendants filed motions to dismiss. ECF Nos. 1, 39, 41, 46. In response to these motions to dismiss, Sabo moved to amend his complaint and was granted leave to do so. ECF No. 50, 55. Sabo's amended complaint asserts the following five claims against Defendants:

| **Claim** | **Asserted Against Defendant(s)** |
|---|---|
| **Count I**: A 42 U.S.C. § 1983 claim under the Fourteenth Amendment for deliberate indifference to his serious medical needs for failing to provide adequate wound care ECF No. 57 at ¶¶ 81-90. | County;<br>Deputy Warden Dady;<br>Administrator Madden;<br>PA Gibbons;<br>Dr. Bell;<br>Dr. Ljungman;<br>Nurse Squib; and<br>Does |
| **Count II**: A 42 U.S.C. § 1983 claim under the Fourteenth Amendment for deliberate indifference to his serious medical needs for failing to properly administer suboxone *id*. at ¶¶ 91-101. | County;<br>Deputy Warden Dady;<br>Administrator Madden;<br>PA Pipak; and<br>Does |
| **Count III**: An Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA") claim for failure to accommodate his disabilities which include insomnia, PTSD, anxiety and depression id. at ¶¶ 102-113. | County |
| **Count IV**: A 42 U.S.C. § 1983 claim under the Fourteenth Amendment for procedural due process for failure to follow ACJ policy to properly staff the medication line *id*. at ¶¶ 114-122. | County;<br>Deputy Warden Dady;<br>Administrator Madden; and<br>Does |
| **Count V**: A 42 U.S.C. § 1983 claim under the Fourteenth Amendment for failure to protect Sabo when he was assaulted in the medication line *id*. at ¶¶ 123-128. | County;<br>Deputy Warden Dady;<br>Administrator Madden; and<br>Does |

While Defendants Nurse Squib and Dr. Ljungman filed answers to Sabo's complaint, ECF Nos. 66, 97, the remaining Defendants filed three separate motions

to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). ECF Nos. 60, 64, 66.

**b. Standard of Review: Fed. R. Civ. P. 12(b)(6): Failure to State a Claim**

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The applicable inquiry under Fed. R. Civ. P. 12(b)(6) is well settled. Rule 12(b)(6) works in conjunction with Rule 8, which requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), and a complaint can be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A defendant has the burden of showing that a complaint fails to state a claim. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (holding modified by *Simon v. United States*, 341 F.3d 193 (3d Cir. 2003)).

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead

facts sufficient to show that [his] claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away allegations that are no more than conclusions and thus not entitled to the assumption of truth; and (3) look for well-pleaded factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint must be dismissed if it merely alleges entitlement to relief without supporting facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

**c. Discussion**

While each group of Defendants separately move to dismiss Sabo's claims, because some arguments and grounds for dismissal overlap, the undersigned will consider the motions in tandem based upon the arguments raised therein.

**i. Deliberate Indifference to Serious Medical Needs for Inadequate Wound Care: Defendants County, Dady, Madden, Gibbons and Bell (Count I)**

Sabo alleges that the County, Deputy Warden Dady, Administrator Madden, PA Gibbons, Dr. Bell, Dr. Ljungman, Nurse Squib and Does were deliberately indifferent to his serious medical needs for failing to provide him with adequate

wound care. ECF No. 57 at ¶¶ 81-90. Defendants County, Deputy Warden Dady, Administrator Madden, PA Gibbons, and Dr. Bell move to dismiss this claim as asserted against them and raise several grounds for dismissal. Each Defendant is addressed in turn.

All prisoners have a right to adequate medical care. In *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'...proscribed by the Eighth Amendment." *Id.* at 104 (internal citation omitted). When assessing medical claims by pretrial detainees, courts must apply the deliberate indifference standard established under the Eighth Amendment but must view the inquiry in the context of the *Bell v. Wolfish* standard, which applies Fourteenth Amendment due process principles rather than the cruel and unusual punishment standard to pretrial detainees. *See Hubbard v. Taylor*, 399 F.3d 150, 165–66 (3d Cir. 2005). A claim based on the deprivation of necessary medical care must include factual allegations detailing: (1) a serious medical need and (2) acts or omissions by officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Not every injury or illness enjoys constitutional protection and only medical needs which are serious are actionable. *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.' A medical need is also serious where the denial of

treatment would result in the 'unnecessary and wanton infliction of pain' or a 'life-long handicap or permanent loss.' " *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (cleaned up). This element "contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." *Moreno-Vigo v. Berkihiser*, No. 1:14-CV-02229, 2016 WL 374451, at *9 (M.D. Pa. Feb. 1, 2016) (citations omitted).

Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). A defendant "must have personal involvement," which a plaintiff can show "through allegations of personal direction or of actual knowledge and acquiescence." *Sasse v. Wetzel*, No. 21-3033, 2022 WL 1552994, at *2 (3d Cir. May 17, 2022) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

**1. Dr. Bell and PA Gibbons**

The only claim Sabo asserts against Dr. Bell and PA Gibbons is for deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment related to his inadequate wound care (Count I). Dr. Bell and PA Gibbons move to dismiss this claim and argue the facts alleged do not rise to the level of deliberate indifference and Sabo has not alleged they were personally involved in his medical care to state such a claim. ECF No. 61 at 6-9. Sabo responds PA Gibbons modified

Sabo's wound care regimen without justification and reduced the number of wound care treatments he received. ECF No. 72 at 6. Sabo also argues PA Gibbons and Dr. Bell "failed to properly clean and provide consistent and adequate wound care" between October and December 2023." *Id.* at 16.

As a threshold issue, Sabo has adequately alleged PA Gibbons and Dr. Bell were personally involved in his deliberate indifference claim related to inadequate wound care. Sabo's allegations against PA Gibbons include:

- PA Gibbons was employed as a physician's assistant at ACJ. ECF No. 57 at ¶ 9.
- PA Gibbons failed to properly clean and provide consistent and adequate wound care to Sabo from October to December 2023. *Id.* at ¶ 21.
- PA Gibbons modified Sabo's wound care regimen in October 2024 by reducing the number of wound care treatments he received and his wound worsened. *Id.* at ¶ 50.
- PA Gibbons waited approximately one month after Sabo contracted MRSA and pseudomonas to transfer him to the hospital for treatment and denied him antibiotic IV treatment. *Id.* at ¶ 30.
- PA Gibbons denied Sabo pain medication. *Id.* at ¶ 36.
- PA Gibbons implemented or acquiesced in a policy, procedure or custom of providing inadequate treatment to inmates with serious medical needs and withholding or minimizing adequate medical care to contain the costs of medical services. *Id.* at ¶¶ 87, 88.

Similarly, Sabo's allegations against Dr. Bell include:

- Dr. Bell was employed as a physician at ACJ. *Id.* at ¶ 11.
- Dr. Bell failed to properly clean and provide consistent and adequate wound care to Sabo from October to December 2023. *Id.* at ¶ 21.
- Dr. Bell waited approximately one month after Sabo contracted MRSA and pseudomonas to transfer him to the hospital for treatment and denied him antibiotic IV treatment. *Id.* at ¶ 30.
- Dr. Bell denied Sabo pain medication. *Id.* at ¶ 36.
- Dr. Bell implemented or acquiesced in a policy, procedure or custom of providing inadequate treatment to inmates with serious medical needs and withholding or minimizing adequate medical care to contain the costs of medical services. *Id.* at ¶¶ 87, 88.

While these allegations are indeed sparse, they nevertheless provide PA Gibbons and Dr. Bell with notice of the claims against them and sufficiently allege how they were personally involved in providing Sabo allegedly inadequate medical care.

Turning to the merits of Sabo's deliberate indifference claim against PA Gibbons and Dr. Bell, he has failed to adequately state a claim. The parties do not dispute Sabo's wound is a "serious" medical condition, but Sabo has failed to adequately allege that PA Gibbons and Dr. Bell were deliberately indifferent to that serious medical need.

"It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Rouse*, 182 F.3d at 197. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 107. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.' " *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) (quoting *U. S. ex rel. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). The distinction between malpractice and deliberate indifference "can be subtle," but "as long as a [medical professional] exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). Medical professionals in a prison system are afforded considerable latitude to diagnose and treat the medical issues of their

inmate patients. *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

Sabo alleges Dr. Bell and PA Gibbons improperly cleaned his wound, denied him IV treatment or other pain medication and treated him in the jail for a month instead of sending him to the hospital, and PA Gibbons reduced the number of wound treatments he received. ECF No. 57 at ¶¶ 21, 30, 36, 50. These allegations present a disagreement with his treatment and do not support a basis for deliberate indifference. "[T]he question whether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment," and "does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 106. Sabo provides no allegations which tend to show they refused to provide care, delayed medical treatment for non-medical reasons, denied prescribed treatment, denied reasonable requests for treatment or persisted in a course of treatment that resulted in pain and risk of permanent injury. According to the amended complaint, Sabo was provided with treatment for his wound immediately upon arrival at ACJ, was admitted to a hospital shortly after his arrival to treat sepsis he contracted from his wound, he was diagnosed and treated for MRSA by ACJ's medical staff, provided with oral antibiotics, hospitalized for treating his MRSA infection and thereafter received regular wound care treatments in March 2024, and after his wound began to improve, in October 2024 PA Gibbons reduced the number of wound care treatments he received. ECF No. 57 at ¶¶ 16-21, 27, 28, 43, 49, 50. Throughout his amended complaint, Sabo vaguely asserts his wound care "fell below the basic

standards of adequate medical care" and his "necessary wound care had been inconsistently and/or not applied in a sterile or proper manner" but does not allege how the wound care treatments either fell below the standard of care or that he was denied a prescribed course of treatment. ECF No. 57 at ¶¶ 21-23. These are conclusory allegations that at most sound in negligence. *Spinner v. Scott*, No. CV 24-945 (JXN)(LDW), 2024 WL 1406639, at *5 (D.N.J. Apr. 2, 2024) (medical decisions related to wound care treatment did not state a claim for deliberate indifference). *But see Brown v. Web*, No. 4:22-CV-01153, 2024 WL 2783903, at *6 (M.D. Pa. May 30, 2024) (allegations that nurse failed to provide prescribed daily wound care treatments and instead came once every three days were sufficient to state constitutionally deficient medical care).

To the extent that Sabo argues PA Gibbons and Dr. Bell failed to provide him adequate medical care due to a policy or custom of providing inadequate medical care and containing costs, these allegations are merely conclusory and fail to state a claim. The Amended Complaint does not provide any context of what relevant policies or customs are, what grounds Sabo believes these policies or customs impacted his medical treatment or what treatment he was denied because of these policies or customs. *See Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674–75 (3d Cir. 2011). An inmate "does not have a constitutional right to unlimited medical care of his choosing, free from all considerations of cost." *Id.* at 675–76. "Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate indifference even if a prisoner does not receive

the most costly treatments or his treatment of choice." *Brightwell v. Lehman*, No. CIV.A. 03-205J, 2006 WL 931702, at *8 (W.D. Pa. Apr. 10, 2006). Thus, a conclusory claim that medical cost was a consideration in treatment, even if the medical professional erred in making the cost-benefit assessment, is not *per se* deliberate indifference and rather sounds in negligence. *See Ocampo v. Noel*, No. CV 3:19-0091, 2022 WL 288188, at *9 (M.D. Pa. Jan. 31, 2022); *Begandy v. Wellpath*, No. 121CV00213SPBRAL, 2022 WL 18282896, at *7 (W.D. Pa. Oct. 27, 2022), *report and recommendation adopted,* No. CV 21-213, 2023 WL 185206 (W.D. Pa. Jan. 13, 2023).

Similarly, to the extent that Sabo basis his deliberate indifference claim on his allegation that "[o]n other numerous occasions prior to December of 2023 and thereafter, medical Defendants communicated to Plaintiff that he would not receive his necessary scheduled wound care due to staffing shortages[,]" ECF No 57 at 34, this statement is too conclusory to state a claim. Plaintiff offers no context on what medical Defendant told him this or whether he indeed failed to receive scheduled wound care, and if so, whether he suffered any injury and how this rises to the level of deliberate indifference.

Accordingly, Sabo has failed to state a deliberate indifference to his serious medical needs claim related to his allegedly inadequate wound care against PA Gibbons and Dr. Bell (Count I) and it is recommended this claim be dismissed.

#### 2. The County Defendants: County, Deputy Warden Dady and Administrator Madden

Sabo likewise alleges the County, Deputy Warden Dady and Administrator Madden were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment related to his wound care (Count I). ECF No. 57 at ¶¶ 81-90.

Defendants Deputy Warden Dady, and Administrator Madden argue this claim must be dismissed against them because Sabo has failed to adequately allege personal involvement and has failed to allege sufficient facts to show that the County Defendants had a policy or custom that violated his constitutional rights. ECF No. 63 at 4-7, 9-10. Sabo responds that the County Defendants were aware of his medical needs through his complaints, grievances and letter from his attorney and failed to act, and implemented or maintained a policy or custom of "providing inadequate treatment to inmates with serious medical needs" and "withholding or minimizing the adequacy of medical care within ACJ to control and contain the cost of medical services." ECF No. 72 at 14-15.

Non-medical prison officials like Deputy Warden Dady and Administrator Madden cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer*, 991 F.2d at 69.

> If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care

> would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability.

*Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). According to Sabo's amended complaint, at all relevant times he was under the care of several medical professionals at ACJ. When a prisoner is being treated by medical professionals, he must allege sufficient facts to show that the non-medical prison officials had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill*, 372 F.3d at 236. Sabo has failed to do so.

Sabo claims that Deputy Warden Dady and Administrator Madden were personally involved because he filed several complaints and grievances as well as had his attorney write them a letter about his allegedly inadequate medical care. ECF No. 72 at 14. Deputy Warden Dady and Administrator Madden cannot be deliberately indifferent simply because they received complaints, grievances, or letters, and thereafter failed to respond to Sabo's medical complaints because he was under the care of several medical professionals at ACJ for his wound care. *Durmer*, 991 F.2d at 69; *Rode*, 845 F.2d at 1207. Thus, Sabo's attempt to establish liability based on their involvement in the grievance process or because they failed to adequately respond to Sabo's complaints does not support a deliberate indifference claim.

Insofar as Sabo claims the County Defendants implemented or maintained a policy or custom of denying medical care to inmates with serious medical needs or

withheld or minimized adequate medical care to contain costs, these claims are conclusory and fail for the same reasons stated above. Sabo provides no context of what relevant policies or customs are implicated, what grounds he believes these policies or customs impacted his medical treatment or what treatment he was denied because of these policies or customs.

Accordingly, Sabo has failed to state a deliberate indifference to his serious medical needs claim related to his allegedly inadequate wound care against the County Defendants (Count I) and it is recommended this claim be dismissed.

#### ii. Deliberate Indifference to Serious Medical Needs for Suboxone Administration: Defendants County, Deputy Warden Dady, Administrator Madden, and PA Pipak (Count II)

Sabo alleges that Defendants County, Deputy Warden Dady, Administrator Madden, PA Pipak and Does were deliberately indifferent to his serious medical needs for failing to properly administer suboxone. ECF No. 57 at ¶¶ 91-101. Defendants County, Deputy Warden Dady, Administrator Madden and PA Pipak move to dismiss this claim as asserted against them and raise several grounds for dismissal. Each Defendant is addressed in turn.

##### 1. The County Defendants: County, Deputy Warden Dady and Administrator Madden

Deputy Warden Dady and Administrator Madden argue this claim must be dismissed against them because Sabo has failed to adequately allege personal involvement move to dismiss this claim and has failed to allege sufficient facts to show that the County Defendants had a policy or custom that violated his

constitutional rights. ECF No. 63 at 4-7, 9-10. Sabo responds that the County Defendants were aware of his medical needs through his complaints, grievances and letter from his attorney and failed to act, and implemented or maintained a policy or custom of "providing inadequate treatment to inmates with serious medical needs" and "withholding or minimizing the adequacy of medical care within ACJ to control and contain the cost of medical services." ECF No. 72 at 14-15.

Deputy Warden Dady and Administrator Madden are correct. At all relevant times, Sabo was under the care of several medical professionals at ACJ. Deputy Warden Dady and Administrator Madden are non-medical prison officials and cannot be considered deliberately indifferent simply because they failed to respond directly to Sabo's medical complaints or grievances related to his disagreement with how his suboxone treatment was administered to him. Thus, Sabo's attempt to establish liability based on their involvement in the grievance process or because they failed to adequately respond to Sabo's complaints does not support a deliberate indifference claim.

For Sabo's claims that the County Defendants implemented or maintained a policy or custom of denying medical care to inmates with serious medical needs or withheld or minimized adequate medical care to contain costs, these claims are conclusory and fail for the same reasons stated above. Sabo provides no context of what relevant policies or customs are implicated, what grounds he believes these policies or customs impacted his medical treatment or what treatment he was denied because of these policies or customs.

Accordingly, Sabo has failed to state a claim for deliberate indifference to his serious medical needs related to his suboxone administration against the County Defendants (Count II) and it is recommended this claim be dismissed.

**2. PA Pipak**

PA Pipak also argues this claim should be dismissed as asserted against her because Sabo's allegations about his suboxone treatment amount to a dissatisfaction or disagreement with his course of treatment. ECF No. 65 at 4-7. Sabo responds that PA Pipak administered three doses of suboxone at 3:00 a.m. which caused Sabo to experience withdrawal symptoms, cravings and pain and adverse effects on his physical and mental health. ECF No. 72 at 17-18. Sabo further responds that PA Pipak's decision to administer suboxone in this way was due to a policy or custom "of withholding or minimizing the adequacy of medical care within ACJ to control and contain the cost of medical services." *Id.* at 18.

As with the County Defendants, Sabo has likewise failed to state a claim for deliberate indifference against PA Pipak. Here he simply disagrees with how PA Pipak administered his suboxone treatment and courts may not second guess medical judgments by transforming them into constitutional claims. *Davis*, 597 F. App'x at 45 (quoting *U. S. ex rel. Walker*, 599 F.2d at 575 n.2). His disagreement about the course of his medical treatment does not by itself constitute deliberate indifference. *Banda v. Adams*, 674 F. App'x 181, 184 (3d Cir. 2017) (citing *Durmer*, 991 F.2d at 67). See also *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (a difference in belief "as to the proper medical

treatment" does not amount to deliberate indifference). Further, Sabo provides only conclusory allegations that administering suboxone in this manner violated professional standards of care. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). See also *Norton v. Primecare Med. Servs.*, No. 1:22-CV-418, 2022 WL 17834068, at *5 (M.D. Pa. Dec. 21, 2022) (no deliberate indifference where prisoner failed to allege any facts showing that administering Suboxone doses five minutes apart created a substantial risk of serious harm). Sabo cites to no legal authority, and this Court has independently found none, which stands for the proposition that prisoners state a claim for deliberate indifference when they claim a prescribed course of treatment should have been administered differently. Such claims sound, at most, in negligence and do not rise to the level of deliberate indifference. Likewise, there are no allegations in the amended complaint from which it can reasonably be inferred to illustrate PA Pipak interfered with or denied a prescribed course of treatment, denied a reasonable request for medical treatment, delayed his suboxone treatment for non-medical reasons, or was otherwise deliberately indifferent.

For Sabo's claims that PA Pipak implemented or maintained a policy or custom that withheld or minimized adequate medical care to contain costs, these claims are conclusory and fail for the same reasons stated above. Sabo provides no context of what relevant policies or customs are implicated, what grounds he believes these policies or customs impacted his medical treatment or what treatment he was denied because of these policies or customs.

Accordingly, Sabo has failed to state a deliberate indifference to his serious medical needs claim related to how suboxone was administered to him against PA Pipak (Count II) and it is recommended that this claim be dismissed.

#### iii. Failure to Accommodate under the ADA against Defendant County (Count III)

Sabo next alleges the County failed to accommodate his disabilities, including insomnia, PTSD, anxiety and depression when they administered his suboxone in one daily dose at 3:00 a.m. ECF No. 72 at 8. Sabo claims the manner in which his suboxone was administered, *i.e.*, one daily dose at 3:00 a.m., exacerbated his mental health diagnoses and caused him to experience withdrawal symptoms, cravings and pain. *Id.* at 20-21. He claims ACJ eventually administered his daily suboxone treatment at 7:00 p.m. ECF No. 57 at ¶ 71.

The County moves to dismiss this claim and argues Sabo "does not identify the disability that he has nor what accommodation he was seeking." ECF No. 63 at 11.

Title II of the ADA provides: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II and ADA regulations expressly apply to "jails, detention and correctional facilities" maintained by state and local governments. 28 C.F.R. § 35.152; *Yeskey v. Com. of Pa. Dep't of Corr.*, 118 F.3d 168, 172 (3d Cir. 1997), *aff'd sub nom. Pennsylvania Dep't of Corr. v. Yeskey*,

524 U.S. 206 (1998). A correctional facility's failure to accommodate a disability also serves as a basis for an ADA claim. "[A] prison's refusal to accommodate inmates' disabilities 'in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs' constitutes a denial of the benefits of a prison's services, programs, or activities under Title II." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 290 (3d Cir. 2019). To state a claim under the ADA, Sabo must allege he was a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise subject to discrimination because of his disability. *Id.* at 288–89.

The proper defendant for a Title II ADA claim is the public entity itself or an individual who controls or directs the functioning of the public entity. *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002). While the County Defendants appear to believe Sabo asserts this claim against the County, Deputy Warden Dady and Administrator Madden, Sabo asserts his ADA claim only against the County. *Compare* ECF No. 63 at 10 *with* ECF No. 57 at p. 17. Nevertheless, even if Sabo attempted to assert this claim against Deputy Warden Dady and Administrator Madden, it would fail because employees named in their individual capacities cannot be sued under Title II of the ADA because they are not a "public entity," and Sabo has not otherwise alleged they are individuals who control or direct the functioning of the public entity. Thus, to the extent Sabo intends to assert this claim against Deputy Warden Dady and Administrator Madden, it should be dismissed.

Turning to the merits of Sabo's ADA claim, a disability under the ADA is considered any "physical or mental impairment that substantially limits one or more major life activities" including, *inter alia*, "caring for oneself" and "sleeping." 42 U.S.C. § 12102(1)(A)-(2)(A). Given that the County Defendants do not provide any legal authority for their argument that Sabo has not identified his disability, the undersigned will assume for purposes of this motion that Sabo's insomnia, PTSD, anxiety and depression qualify as disabilities. *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 117 F.4th 503, 528 (3d Cir. 2024), *cert. denied sub nom. Wetzel v. Williams*, 146 S. Ct. 91 (2025) ("Mental illness qualifies as a disability under the ADA.") (cleaned up). *See also DiFraia v. Ransom*, 171 F.4th 622, 632 (3d Cir. 2026) (assuming opioid addiction is a disability under the ADA).

The failure to provide adequate medical care to a disabled inmate does not automatically give rise to an ADA claim and the ADA does not create a remedy for claims that sound in medical malpractice. *Montanez v. Price*, 154 F.4th 127, 147 (3d Cir. 2025). To adequately state an ADA claim related to the level of medical care an inmate received, he must allege he was denied medical care "*because of his disabilities*" and not merely denied care "*for his disabilities*." *Id.* (emphasis in original). *See also Kokinda v. Pennsylvania Dep't of Corr.*, 663 F. App'x 156, 159 (3d Cir. 2016) (the ADA "prohibits disability-based discrimination, not inadequate treatment for the disability.").

Sabo has failed to allege that he was precluded from participating in a program, service, or activity, or otherwise subject to discrimination because of his

disability. He does not claim that he was denied access to his suboxone prescription, rather he disagrees with ACJ's decision regarding the timing of his treatment which does not support an ADA claim. He has not alleged he was excluded from participating in suboxone treatment or any other service; the crux of his claim is that he took issue with ACJ's decision to provide his medication at 3:00 a.m. Simply put, the claims raised by Sabo are premised on his disagreement with *how* ACJ administered his medical treatment. "[D]ecisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA." *Enrique Nunez v. Prime Care Health, Inc.*, No. 19-CV-0859, 2019 WL 1400466, at *1 (E.D. Pa. Mar. 27, 2019) (collecting cases). That ACJ eventually administered Sabo's suboxone prescription at a time he preferred does not mean he was excluded from any service because of his disability. Rather, it emphasizes his claims are merely premised on his own subjective disagreement with his medical treatment.

Accordingly, Sabo has failed to state an ADA claim against the County and it is respectfully recommended that this claim be dismissed.

#### iv. Procedural Due Process and Failure to Protect against Defendants County, Deputy Warden Dady and Administrator Madden (Counts IV & V)

Lastly, Sabo alleges the County, Deputy Warden Dady and Administrator Madden violated his procedural due process rights when they failed to follow ACJ policy to properly staff the medication line when Sabo was assaulted by another inmate who had a metal cane. ECF No. 57 at ¶¶ 72-80; 114-122; 123-128.

The County Defendants argue Sabo's allegations related to understaffing are "limited and conclusory" and Sabo does not adequately allege they "were aware of any substantial risk of serious harm" or were deliberately indifferent to Sabo's safety. ECF No. 63 at 12-13.

The Fourteenth Amendment procedural due process clause provides that no State shall "deprive any person of life, liberty or property, without the due process of law." U.S. Const. amend. XIV, § 1. To state a claim for deprivation of procedural due process rights, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.' " *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). "Without the presence of a protected interest, a § 1983 due process claim simply cannot stand." *Diaz v. Canino*, 502 F. App'x 214, 217 (3d Cir. 2012)(unpublished) (citing *Sample v. Diecks*, 885 F.2d 1099, 1113 (3d Cir. 1989)). The Due Process Clause requires that before state action deprives a person of a protected interest, those deprivations must be carried out in accordance with due process of law which includes notice and opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–548 (1985).

Sabo fails to adequately identify what protected interest was implicated and what procedures did not provide him with adequate due process when he was assaulted by another inmate in the medication line. Sabo also fails to provide any

legal basis to support his claim that one instance of understaffing and allowing another inmate a metal cane in violation of ACJ policy give rise to a procedural due process claim under the Fourteenth Amendment. Furthermore his claims that a "lack of staffing is a known issue within ACJ" are conclusory. "[A] violation of [a jail's] internal policy does not automatically rise to the level of a Constitutional violation." *Washington v. Salamon*, No. 4:21-CV-01746, 2022 WL 4096877, at *5 (M.D. Pa. Sept. 7, 2022) (quoting *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2008), *aff'd,* 366 F. App'x 393 (3d Cir. 2010)) (collecting cases). Further, the lack of due care by prison officials does not state a claim under either the substantive or procedural aspects of the Due Process Clause. *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986). Accordingly, Sabo has failed to state a Fourteenth Amendment procedural due process claim and it is recommended this claim be dismissed.

The same is true for Sabo's failure to protect claim. The Fourteenth Amendment provides pretrial detainees like Sabo the same protections available to convicted prisoners under the Eighth Amendment, including protection against inmate violence. *Bistrian*, 696 F.3d at 367 (abrogated on other grounds as recognized by *Fisher*, 115 F.4th at 204). Prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). But, not all prison assaults constitute a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To state a viable failure to protect claim, an inmate must allege facts sufficient to support plausible inferences that: (1)

he suffered from an objectively serious deprivation ; and (2) the prison official carried out the deprivation with a subjectively "culpable state of mind." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). To establish the first element, the plaintiff must show he was denied the "minimal civilized measure of life's necessities" and is "incarcerated under conditions posing substantial risk of serious harm." *Porter v. Pennsylvania Dep't of Corr.,* 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). To establish the second element, the plaintiff must show the prison official was deliberately indifferent to his health and safety. *Farmer*, 511 U.S. at 847. This means the official was actually aware of an excessive risk of harm and did not address it. *Id.* Finally, even if both of these elements are met, a prison official is not liable if they acted reasonably, regardless of the harm incurred. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

Sabo has failed to plead sufficient facts to establish a plausible failure to protect claim against the County Defendants. Sabo's allegations against the County Defendants related to his failure to protect claim include:

- ACJ maintains a policy or procedure requiring a captain and sergeant to observe the medication line to prevent injuries to inmates ECF No 57 at ¶ 75.
- ACJ maintains a policy or procedure of prohibiting metal objects inside ACJ. *Id.* at ¶ 76.
- In July 2024, Sabo was struck in the head by another inmate with a metal cane and sustained a concussion while waiting in line for medication and there was only one correctional officer present. *Id.* at ¶¶ 72-73.
- The County Defendants, including Dady and Madden "failed to properly staff ACJ," the "lack of staffing is a known issue within ACJ and that Defendants Dady and/or Madden were well-aware of the same prior to the incident[.]" *Id.* at ¶¶ 74, 78.

Given these allegations, it appears Sabo names Deputy Warden Dady and Administrator Madden as supervisors and attempts to hold the County liable under a theory of municipal liability.

Supervisors like Deputy Warden Dady and Administrator Madden may be personally liable for failure to protect either when (1) they established or maintained a policy, practice or custom, which with deliberate indifference to the consequences, directly caused the constitutional harm, or (2) if the supervisor participated in violating the plaintiff's constitutional rights, directed others to violate them, or as the person in charge, knew of and acquiesced to his subordinates' violations. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Similarly, municipalities like the County are liable under section 1983 when they implement or maintain a policy or custom, independent of the individual officers' actions that was a legal cause of the constitutional harm. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91, 694 (1978).

Here, there are no allegations that Deputy Warden Dady or Administrator Madden participated in, caused others to violate or knew of and acquiesced to their subordinates' constitutional violations. Instead, Sabo appears to assert that the County, Deputy Warden Dady and Administrator Madden are liable because they maintained a policy, practice or custom of understaffing the medication line. But, the allegations provided fall far short of adequately stating a failure to protect claim related to ACJ's alleged understaffing.

First, Sabo has not adequately identified what policy, practice or custom violated his constitutional rights. When a plaintiff alleges an unconstitutional custom, he "must evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Monell*, 436 U.S. at 698). Sabo's single allegation that understaffing was a "known issue" at ACJ is merely speculative that the County Defendants maintained a custom of understaffing.

Even assuming that Sabo adequately identified a custom of understaffing at ACJ, Sabo has failed to plead sufficient facts to show deliberate indifference or causation. Sabo has failed to allege deliberate indifference because there are no facts to suggest that the County, Deputy Warden Dady or Administrator Madden should have known it was an obvious risk to staff only one corrections officer during medication distribution. *See Bistrian*, 696 F.3d at 370–71 (allegations that "an inmate with a history of violence might attack another inmate for an unknown reason" is too speculative of a risk to state deliberate indifference by prison officials). *Williams v. Delaware Cnty. Bd. of Prison Inspectors*, 844 F. App'x 469, 475 (3d Cir. 2021); *McDowell v. Brown*, 392 F.3d 1283, 1291 (11th Cir. 2004) ("[Plaintiff] cannot rely on a generalized policy of understaffing. The [Defendant] County must have a 'deliberate intent' to inadequately staff the [jail]."). Similarly, Sabo offers only speculative allegations for causation that understaffing caused the assault because generally understaffing was "a known issue" at ACJ. *See Brahm v. Cnty. of Chester*, No. 23-CV-3848, 2024 WL 5147021, at *8 (E.D. Pa. Dec. 17, 2024), *appeal*

*dismissed,* No. 25-1127, 2025 WL 4076397 (3d Cir. Aug. 1, 2025). Finally, to the extent that Sabo attempts to qualify the County's failure to follow its internal staffing or "no-metal" policies as constitutional violations, such allegations do not rise to the level of a constitutional violation. *See Washington*, 2022 WL 4096877, at *5.

Accordingly, Sabo has failed to state a Fourteenth Amendment failure to train claim and it is recommended this claim be dismissed.

**d. Leave to Amend**

Finally, in a civil rights action, when a court dismisses a cause of action for failure to state a claim, a court must allow the plaintiff to amend a deficient complaint, regardless of whether the plaintiff requests to do so, unless amendment would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Amendment is futile when the amendment would fail to state a claim upon which relief could be granted, *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010), and inequitable when there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Delay becomes undue when a plaintiff "has had previous opportunities to amend a complaint." *Gorrio v. Francis*, 141 F.4th 90 (3d Cir. 2025). Similarly, when a plaintiff has in fact previously amended his complaint, granting further leave to amend can be denied as futile. *Grayson*, 293 F.3d at 110.

After Sabo filed his original complaint, several Defendants moved to dismiss the original complaint on largely the same grounds set forth in the present motions. In response, Sabo conceded deficiencies in his original complaint and moved for leave to file an amended complaint to "include additional facts to support his claim and to correct other deficiencies raised by the defense." ECF No. 50 at 2. Sabo was granted leave to amend his complaint and the present motions to dismiss followed. Given that Sabo amended his complaint after he was privy to the deficiencies in his complaint, it is recommended these claims be dismissed with prejudice as amendment would be futile.

## III. Conclusion

Based on the foregoing, it is respectfully recommended that the motions to dismiss ECF Nos. 60, 62, 64 be granted in their entirety and all claims against Defendants County, Deputy Warden Dady, Administrator Madden, PA Gibbons, Dr. Bell, and PA Pipak be dismissed with prejudice without leave to amend.

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72, and the Local Rules for Magistrates, the parties may file objections by **May 26, 2026.** Failure to file timely objections will waive any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

DATED this 12th day of May, 2026.

BY THE COURT:

s/Christopher B. Brown
United States Magistrate Judge